## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

CLARK L. BRURUD,                        )
                                        )
                    Petitioner,         )
                                        )
v.                                      )          Case No. 03-CV-420-GKF-FHM
                                        )
EASTERN OKLAHOMA REGIONAL               )
DIRECTOR, BUREAU OF INDIAN AFFAIRS,     )
                                        )
                    Respondent.         )

## OPINION AND ORDER

This matter comes before the court on the petitioner's administrative appeal from a decision of the Interior Board of Indian Appeals, pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, which grants judicial review of agency action.

## I.  BACKGROUND

This appeal stems from a disagreement regarding the repair and maintenance of a road in Osage County.  The petitioner Clark L. Brurud ("Brurud"), through his oil company Stockbridge Energy, LLC, operates oil wells on the property where the road is located.  Brurud's oil and gas activities in Osage County are regulated in part by the Bureau of Indian Affairs ("BIA"), pursuant to the Act of June 28, 1906, 34 Stat. 539.  Under this Act, the entire mineral estate in Osage County was reserved from allotment and held in trust by the United States government for the Osage Tribe.  Pursuant to its trust responsibilities, the United States has promulgated regulations governing oil and gas activities in Osage County.  *See* 25 C.F.R. § 226 *et seq*.

In April 2001, the Superintendent for the Osage Agency of the BIA notified Brurud in writing that his lease roads were in need of repair and his wells were in need of proper signage.  The BIA requested that the road work and placement of signage be completed by May 21, 2001.  During

April, June and July of 2001, several meetings were held among Brurud, Brurud's father, the Superintendent of the Osage Agency of the BIA, and the surface fee land owner. The Superintendent maintained that Brurud was solely responsible for the repair and maintenance of the roads. Brurud, on the other hand, asserted that the repair and maintenance costs should be divided equally among himself, the surface fee land owner, the surface lessee (a farmer), and unidentified hunters who utilized the road.

In June 2001, Brurud made some repairs to the road. On July 23, 2001, the BIA determined that the road was still in need of repair and that Brurud (or his employees) had been avoiding the damaged portion of the road by driving into the field, which caused damage to the farmer's crops. On July 3, 2001, the Superintendent advised Brurud that road repair was required and oil production from the site where the road was located would be stopped until the repairs were made. Brurud's wells were "red tagged" and sealed. On August 3, 2001, the Regional Director ordered the seals removed.

The Superintendent sent a letter to Brurud on August 2, 2001, ordering him "to completely repair all roads used by [Brurud and his] staff. . . before August 10, 2001" and "to keep all [the] roads in good repair." The Superintendent issued another letter on August 10, 2001, stating that Brurud had "made many improvements" to the roads but "still failed to repair a section of the road." Because Brurud did not comply with the Superintendent's orders, he was assessed a fine on August 10, 2001 of $25.00 per day until he completed the work. The Superintendent stated that he would consider increasing the fine if the work was not finished by August 17, 2001. The Superintendent classified the fine as a penalty permitted by 25 C.F.R. § 226.42 and notified Brurud that the decision was appealable to the Regional Director in accordance with 25 C.F.R. § 2.

2

On August 17, 2001, the Superintendent found that the work was still not completed and increased the fine to $100 per day.  The Superintendent again noted that the penalty was subject to appeal under 25 C.F.R. § 2.  On August 20, 2001, the Superintendent acknowledged that the road work was complete and calculated the total fine assessed against Brured, from August 10 to August 19, 2001, as $300.00.  Brurud paid the fine under protest.

Brurud appealed the Superintendent's decisions of August 2, 10, 17 and 20, 2001, to the Regional Director.  On February 8, 2002, the Regional Director affirmed the Superintendent's decisions.  Brurud then appealed to the Interior Board of Indian Appeals, the highest administrative appellate body.  On May 21, 2003, the Interior Board of Indian Appeals affirmed.  The Board determined that the Regional Director did not err in upholding the Superintendent's decisions to require Brurud to repair the road and to assess fines or block access to the lease in order to enforce compliance with the orders.  In addition, the Board agreed with the Regional Director that Brurud did not present sufficient evidence to show that the Agency discriminated against Brurud or singled him out among other oilfield operators.

Brurud now appeals to this court, asking that the Board's decision be set aside.  Brurud argues that the Superintendent's/BIA's actions were (i) without jurisdiction or authority; (ii) vague and subjective; and (iii) without uniformity in their application as to all lessees of mineral interested administered by the BIA.

## II.  DISCUSSION

### A.  Standard

The parties agree the agency's decisions are subject to judicial review by this court pursuant to the Administrative Procedures Act.  *See* 5 U.S.C. §§ 702 and 704 (A person adversely affected

or aggrieved by agency action is entitled to judicial review thereof).  "Reviews of agency action in the district courts must be processed *as appeals*.  In such circumstances, the district court should govern itself by referring to the Federal Rules of Appellate Procedure." *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1580 (10th Cir. 1994)(emphasis in original).  Review is confined to the administrative record.  *Id.*

The standard of review is whether the agency's decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see also Exxon Mobil Corp. v. Norton*, 346 F.3d 1244, 1248 (10th Cir. 2003).  "The duty of a court reviewing agency action under the 'arbitrary or capricious' standard is to ascertain whether the agency examined the relevant data and articulated a rational connection between the facts found and the decision made." *Exxon*, 346 F.3d at 1248, quoting *Olenhouse*, 42 F.3d at 1574 (other citations omitted).  In making a decision, the court "shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error."  5 U.S.C. § 706.  Findings and conclusions found to be in excess of the agency's jurisdiction or authority must be set aside.  5 U.S.C. § 706(2)(C).

### B.  Authority of the BIA

Brurud's primary contention is that the BIA lacked authority to require him to repair and maintain the oil field road.  The BIA's orders requiring Brurud to repair the road were based on 25 C.F.R. § 226.19, which provides in pertinent part:

> (a) Lessee or his/her authorized representative shall have the right to use so much of the surface of the land within the Osage Mineral Estate as may be reasonable for operations and marketing. . . . **Lessee shall conduct his/her operations in a workmanlike manner, commit no waste and allow none to be committed upon the land, nor permit any unavoidable nuisance to be maintained on the**

**premises under his/her control**.

25 C.F.R. § 226.19(a)(emphasis added).  This provision of 25 C.F.R. § 226.19 is incorporated and restated in Brurud's oil lease as setting forth the standards for oil operations within the Osage Reservation.

The Regional Director held that 25 C.F.R. § 226.19(a) required Brurud to maintain the road, and the agency had authority to prevent waste and nuisance on the land.  (February 8, 2002 Decision, p. 3; August 15, 2002 Decision, p. 3).  The Regional Director found that the record revealed that "the oil field road had large holes, which caused the operator and other persons to drive off the road and through the field.  This in turn caused damage to the crops." (*Id.*).  Based on the regulations, the Agency was entitled to require Brurud to repair the road in order to prevent waste to the property.  In requiring repair of the road, "the Agency was simply enforcing the terms of the regulations." (*Id.*). The Board agreed with the Regional Director, concluding that Brurud did not carry his burden of showing that the BIA committed error in requiring him to repair the oil field road.

This court concludes that the decisions of the Regional Director and Board are not arbitrary or capricious, or otherwise contrary to law.  As noted, the regulations clearly provide that a lessee "shall conduct his/her operations in a workmanlike manner, [and] commit no waste. . . upon the land."  The record substantially supports the conclusion that the road was in disrepair, which caused damage to the crops and surrounding farmland.  As a result of the poorly maintained road, Brurud violated 25 C.F.R. § 226.19(a), as well as the terms of his lease, by conducting operations in an un-workmanlike manner and committing waste to the land.  The court concludes that the BIA acted within the bounds of section 226.19(a) in requiring repair of the road.

Brurud's argument that 25 C.F.R. § 226.19(a) does not specifically address maintenance and repair of roads is to no avail.  Section 226.19 addresses oil field operations in general and the land upon which the oil operations are conducted.  Section 226.19 necessarily includes oil field roads, especially when the poor condition of the road causes damage to the land.

Brurud next argues that the BIA had no authority to assess civil penalties against him in the form of monetary fines or otherwise.  25 C.F.R. § 226.42 provides in part:

> Violation of any of the terms or conditions of any lease or of the regulations in this part shall subject the lease to cancellation by the Superintendent, or Lessee to a fine of not more than $500 per day for each day of such violation or noncompliance with the orders of the Superintendent, or to both such fine and cancellation. . . .

25 C.F.R. § 226.42.  In addition, 25 C.F.R. § 226.28(c) states that the "Superintendent is authorized to shut in a lease when the lessee fails to comply with the terms of the lease, the regulations, and/or orders of the Superintendent."

The Regional Director and the Board determined that sections 226.42 and 226.28 authorized the BIA to prevent Brurud from selling the oil in his tanks or to assess a fine against Brurud for failure to comply with the Superintendent's orders to repair the road.  This court agrees.  The language of 25 C.F.R. §§ 226.42 and 226.28(c) expressly allows the Superintendent to assess fines or "shut in a lease" when a lessee violates the terms of his lease, the regulations, or orders of the Superintendent.  Here, the record demonstrates that Brurud violated all three – the lease, the regulations, and the orders of the Superintendent.  The court concludes that the agency did not exceed its authority by fining Brurud or by preventing oil production from the subject lease.  The record demonstrates that the Superintendent ordered Brurud to repair the road several times, but Brurud either refused to or did not adequately maintain the road.  The decisions of the Regional

6

Director and Board are not an abuse of discretion and should be affirmed.

### C.  Whether the orders are vague or subjective

Brurud asserts that the Superintendent's orders are unenforceable because they are too vague. Brurud argues that the Superintendent simply told him to "completely repair all roads used. . ." and that he had "failed to repair a section of the road." According to Brurud, the word "repair" can have many different interpretations to many different individuals.  Brurud argues that it remains an open question from the Superintendent's orders as to whether he was supposed to grade the road, repair the ditching, insert a culvert, or apply gravel or shale, and if so, how much.

Given the circumstances of this case, the court finds Brurud's assertions disingenuous.  The record shows, and Brurud admits, that (i) there were "several meetings" among Brurud and the Superintendent (among others); (ii) there were numerous letters and oral communications between Brurud and the Superintendent; and (iii) the Superintendent gave Brurud several opportunities to repair the road prior to imposing any penalties against him.  If Brurud had any questions regarding the details of the Superintendent's requests, he simply could have asked.  There is no question that Brurud knew how to contact the Superintendent, that they had discussed the problems with the road many times, and that the Superintendent gave Brurud several opportunities to adequately repair the road.  Moreover, the correspondence in the record specifies the problems with the road, the conditions revealed by the field inspections, and the concerns with Brurud's failure to repair the road (namely, the damage to the land and crops caused by driving off the road).  The court concludes that the agency's orders were not vague and declines to set aside the Board's decision on that basis.

### D.  Whether the BIA's orders are without uniformity

Finally, Brurud argues that the BIA is biased and its orders lack uniformity among other

lessees in Osage County.  Brurud claims he was singled out due to a dispute between the Brurud family and an employee of the Osage Agency BIA.  In support of his contention, he submits two affidavits.

The first affidavit is signed by Ralph Davis, manager of CDFA Services.  The affidavit contains only one sentence, which states:

> In fulfilling the terms of the contract with Osage County in Oklahoma to identify oilfield related equipment not on the tax rolls, I have inspected several hundred leases and have not observed nor am I aware of any leases that have storage tanks that have been red tagged or the lessee fined because of the lease roads lacking maintenance.

(Document No. 13-7).

This court agrees with the Regional Director and the Board that Mr. Davis's affidavit is insufficient to establish bias or lack of uniformity in the Superintendent's orders.  The affidavit does not specify  the conditions of the other lease roads, whether any of the roads he observed actually lacked maintenance, how he would know whether or not the lessees had ever been fined, whether the other lessees ever received orders to repair the roads, whether the other lessees ever refused or failed to comply with any such orders, or whether the lack of road maintenance (if any) on the other lease roads impacted any crops or farmland.  In sum, the affidavit provides no detail regarding the circumstances of the other leases and, as a result, provides no comparison to the lease road in question.  The court concludes that the Regional Director and Board did not err in determining that the affidavit of Mr. Davis fails to establish bias or discrimination on the part of the BIA.

The second affidavit presented by Brurud is signed by Joe Bob Kelley, the owner of Kelley Well Service.  Mr. Kelley was a contract pumper for the subject lease during the time in question.  Mr. Kelley states that the majority of the damage to the road came from unidentified deer hunters

and the surface lessee.  Mr. Kelley also states that Stockbridge (Brurud's company) performed 100% of the maintenance on the road, and that he and Stockbridge were locked out and denied access to the oil tanks for some time by the landower.

The Board was not required to consider Mr. Kelley's affidavit because it was not submitted as part of the appeal to the Regional Director.  Nonetheless, the Board concluded that Mr. Kelley's affidavit did not establish bias or discrimination.  The Board determined that the affidavit addresses only the condition of Brurud's road and Mr. Kelley's opinion as to who caused the damage.  It does not compare the condition of Brurud's road to any other oil field road under the BIA's jurisdiction, nor does it show that Brurud was required to do anything that other lessees were not required to do. This court agrees.  Brurud simply has not submitted sufficient evidence to establish bias or lack of uniformity with respect to the agency's actions.  The decision of the Board is not an abuse of discretion.[1]

Lastly, Brurud argues that he should not be required to bear the full cost of repairing and maintaining the road.  The Board concluded that it was not aware of any legal authority – and Brurud provided no legal authority – which authorized the BIA to require contributions toward road maintenance from individuals who are not doing business with an Indian Tribe or individuals who are not under BIA's regulatory jurisdiction.  The Board observed that Brurud had the option to sue the land owner, farmer, or hunters for contributions toward the road repairs, if such a lawsuit was

---

[1] Brurud submitted to this court a letter dated May 13, 2002 from the BIA Osage Agency to Eric and Amber Pilgrim.  (Document No. 13-6).  In the letter, the BIA states: "We require our lessees to maintain their lease roads adequate for their use.  This may or may not require gravel or any other road material."  The letter is not part of the administrative record and was not submitted to the Regional Director or the Board.  Therefore, this document cannot be considered by the court.  *See Olenhouse*, 42 F.3d at 1580.  Even if the court considered it, however, it would provide further support to the conclusion that the BIA did not single out Brurud when it required him to repair and maintain the lease road.

warranted.  This decision by the Board is not arbitrary or capricious, or otherwise contrary to the law.

  **WHEREFORE**, for the reasons set forth above, the agency's decisions are affirmed.  The Board's decision does not amount to an abuse of discretion and is supported by substantial record evidence.[2]

  **IT IS SO ORDERED** this 7th day of July 2008.


        Gregory K. Frizzell
        United States District Judge
        Northern District of Oklahoma

---

[2] The court rejects the BIA's argument that this case is now moot because Brurud and Stockbridge no longer have interests in oil leases within Osage County.  Brurud was the assignee of the oil lease at the time of the agency's decisions, he was ordered to repair the roads at his own cost, he was aggrieved by the agency's action, he was assessed a monetary fine by the agency (which he paid under protest), and his oil production was stopped for a period of time by the agency.  The parties have actual adverse legal interests, which are not hypothetical in nature.  The court concludes that there is an actual controversy between the parties within the meaning of Article II, section 2 of the Constitution, and the case is not moot.  *See e.g. Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937).